UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMARLE HILL,
    *Plaintiff*,

v.

TYBURSKI *et al.*,
    *Defendants*.

No. 3:19-cv-01674 (JAM)

## INITIAL REVIEW ORDER

Plaintiff Jamarle Hill is a pre-trial detainee in the custody of the Connecticut Department of Correction ("DOC"). He has filed a civil rights complaint under 42 U.S.C. § 1983 against Lieutenant Tyburski, Correctional Officers Crosby, Miller, Jefferson, and Doe and Mental Health Caseworker Nate, all of whom are employees of the DOC. He principally alleges that he was subject to an unreasonable strip search on March 1, 2019. Based on my initial review of the complaint, I will permit Hill's Fourth and Fourteenth Amendment claims regarding this strip search to proceed against all defendants except Nate, will dismiss defendant Nate, and will otherwise dismiss Hill's remaining claims.

### BACKGROUND

According to the DOC, Jamarle Hill is a pretrial detainee who has been in DOC custody since 2017, awaiting trial for various drug and firearm offenses; he is presently incarcerated at Northern Correctional Institution ("Northern CI").[1] The review of Hill's complaint has been

---

[1] *See* State of Connecticut Department of Corrections, *Inmate Information*, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=406918 [https://perma.cc/3ZY3-27HV] (accessed Apr. 17, 2020); State of Connecticut Judicial Branch, *Criminal/Motor Vehicle Pending Case Detail*, https://www.jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending&Key=1820f90b-3291-43d2-998a-7a66f569cf16 [https://perma.cc/K3H7-TPV5] (last accessed Apr. 17, 2020) (listing pending charges for Case No. #U04W-MV17-0445374-S).

complicated by his practice of repeatedly issuing corrections, emendations, and motions on the present docket—some of which, I have ruled, pertain to a different case entirely. Doc. #30. I will confine this initial review order to the initial complaint Hill filed, Doc. #1, as clarified and expanded by two supplemental filings, Docs. #12, #25. This set of documents pertain principally to an alleged sexual assault perpetrated on Hill on March 1, 2019; indeed, Hill has sued as defendants only persons involved with this sexual assault (with one exception, discussed below). I will recapitulate only those facts from the complaint as pertain to that sexual assault allegation. As always, I assume the facts as alleged in the amended complaint to be true solely for purposes of my initial review.

By way of background, the complaint alleges that in March 2018, during Hill's confinement at New Haven Correctional Center ("NHCC"), inmates and staff members spread rumors that Hill was a child molester because, although he had not been charged with any sex offenses, Hill was allegedly photographed engaging in sexual activity in the presence of (but not involving) an infant child. Doc. #12 at 6 (¶ 7). Hill explains that this photograph does not depict what it seems to depict, *id.* at 7, but the photograph, and the rumors it created, circulated in each of the correctional institutions to which Hill was transferred: first NHCC, where he had an altercation with another inmate over the allegations, *id.* at 6 (¶ 8); then Hartford Correctional Center ("Hartford CC"), where Hill was verbally harassed, *ibid.* (¶¶ 5, 6, 9); then to Northern CI, and then to state courthouses in cities where Hill's children live, *id.* at 7 (¶ 10).

The inciting incident of the present complaint occurred on March 1, 2019, when Hill was incarcerated at Hartford CC. Upon Hill's return to Hartford CC from a court proceeding, Officers Crosby, Miller, Jefferson, and Doe subjected Hill to a hands-on strip search. *Id.* at 5 (¶¶ 1-4). During the search, Officers Crosby and Doe groped Hill's buttocks, Officer Miller pushed down

on Hill's back, and Officer Jefferson grabbed Hill's ankles. *Ibid.* (¶ 3). Lieutenant Tyburski authorized and videotaped the strip search. *Ibid.* (¶ 2). In May 2019, Hill filed a statement regarding the strip search with a detective from the Connecticut State Police in Hartford. *Id.* at 6 (¶ 4).

Hill spoke to Nate, a Mental Health Caseworker at Hartford CC, about the verbal harassment that he had endured due to the rumor that he was a child molester, *ibid.* (¶ 5), as well as about the strip search incident, Doc. #1 at 5 (¶ 2). "The next day," he claims, Lieutenant Tyburski charged him with making false claims. *Ibid*.

On December 13, 2019, Hill sued Lieutenant Tyburski and Officers Crosby, Miller, Jefferson, and Doe, as well as Mental Health Case Worker Nate, alleging violation of his Fourteenth Amendment due process rights owing to "oral slander defamation of character" in connection to allegations of child molestation, and violation of his Fourth and Eighth Amendment rights arising from the strip search. Docs. #12, #25. He has sued all of the defendants in their personal capacity and seeks $37,000,000 in money damages. Doc. #25 at 2.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Strip search*

Hill claims that on March 1, 2019, Officers Crosby, Miller, Jefferson, and Doe illegally strip-searched him and subjected him to sexual assault. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. In the prison context, the Fourth Amendment proscribes unreasonable searches of both pretrial detainees and sentenced inmates, including unreasonable strip searches. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Harris v. Miller*, 818 F.3d 49, 58 n. 2 (2d Cir. 2016) (*per curiam*).

When evaluating a claim that an isolated strip search infringed on an inmate's Fourth Amendment rights, a court must consider four factors in determining whether the search was reasonable: "(1) the scope of the intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted." *Harris*, 818 F.3d at 63 (citing *Bell*, 441 U.S. at 559). A strip search violates the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean-Laurent v. Wilkerson,* 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (collecting cases), *aff'd* 461 F. App'x 18

4

(2d Cir. 2012). Similarly, prison officials may not engage in a search or seizure for sexual gratification purposes. *See Gilliam v. Black*, 2019 WL 3716545, at *10 (D. Conn. 2019); *see also Lewis v. Huebner*, 2020 WL 1244254, at *9 (S.D.N.Y. 2020) (collecting cases).

The complaint alleges that after Hill's return to Hartford CC from a matter in state court, Officers Crosby, Miller, Jefferson, and Doe, and Lieutenant Tyburski subjected Hill to a manual body cavity strip search. Hill alleges that during the search, Officer Miller pushed down on his back, Officer Jefferson grabbed his ankles, and Officers Crosby and Doe groped and spread his buttocks apart. Lieutenant Tyburski authorized and videotaped the search. Documents filed as exhibits to the complaint suggest that Officers Crosby, Miller, Jefferson, and Doe conducted a hands-on, controlled strip search of Hill pursuant to the order of Lieutenant Tyburski because Hill would not comply with orders to submit to a routine strip search. *See* Doc. #15 at 1, 7; State of Connecticut Department of Correction Administrative Directive, 6.7(3)(f), (p) & (5)(e), Controlled Strip-Searches.[2]

Hill's allegations may be construed as a claim that the more intrusive and forceful controlled strip search, authorized and videotaped by Lieutenant Tyburski and performed by Officers Crosby, Miller, Jefferson, and Doe, was unnecessary or excessive. I conclude that Hill has stated a plausible claim that the scope of the search and the manner in which the search was conducted was unreasonable. Accordingly, I will permit Hill's Fourth Amendment unreasonable search claim to proceed against Officers Miller, Jefferson, Crosby, and Doe, and Lieutenant Tyburski.

---

[2] *See Searches Conducted in Correctional Facilities*, CONNECTICUT DEPARTMENT OF CORRECTIONS ADMINISTRATIVE DIRECTIVE 6.7 (June 29, 2018), http://portal.ct.gov/DOC/AD/AD-Chapter-6 [https://perma.cc/69E8-SMWN].

To the extent that Hill alleges not only an unreasonable strip search but a use of excessive force and physical sexual assault, this claim may also be cognizable under the Due Process Clause of the Fourteenth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015) (discussing due process standard applicable to excessive force claims by pre-trial detainees and distinguishing it from higher standard applicable under the Eighth Amendment to excessive force claims by convicted prisoners). I will therefore also permit Hill's Fourteenth Amendment claim to proceed against all defendants.

*Mental Health Caseworker Nate*

Hill alleges that at some point during his confinement at HCC, he spoke to Caseworker Nate about the harassment that he had endured due to rumors that he was a child molester. Doc. #12 at 6 (¶ 5). There are no allegations that Caseworker Nate failed to counsel Hill or provide him with mental health treatment in response to this information, or that Nate himself induced Tyburski to take retaliatory action against him, or indeed that Nate did anything to violate any of Hill's constitutional rights. I will accordingly dismiss the complaint against Nate for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

*Constitutional "Stigma Plus" Defamation*

Hill alleges that unnamed inmates and staff members at the various correctional facilities at which he has been detained engaged in "oral slander defamation of character child molester rumor, stigma, lie . . . harassment, hate crime" in violation of the First Amendment. Doc. #25 at 3; *see also* Doc. #12 at 7, Doc. #1 at 6. Generally, defamation is an issue of state law, not of federal constitutional. *See Lauro v. Charles*, 219 F.3d 202, 207 (2d Cir. 2000). But federal constitutional relief is available for defamation committed by government officials when a plaintiff can demonstrate "a stigmatizing statement plus a deprivation of a tangible interest."

*Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005).

To establish such a "stigma plus" claim, a plaintiff must show (1) "the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (Sotomayor, J.) (cleaned up). This state-imposed alteration of status or burden must be "in addition to the stigmatizing statement." *Ibid*. (emphasis omitted). "Thus, even where a plaintiff's allegations would be sufficient to demonstrate a government-imposed stigma, such defamation is not, absent more, a deprivation of a liberty or property interest protected by due process." *Ibid*.

The Second Circuit has held that "wrongly classifying an inmate as a sex offender may have a stigmatizing effect which implicates a constitutional liberty interest." *Vega v. Lantz*, 596 F.3d 77, 81-82 (2d Cir. 2010). Assuming that the circulation of rumors about an inmates' uncharged sexual activities by state employees constitutes a state-based "classification" as that term is defined by *Vega*, the complaint clearly indicates that Hill believes his child-molester designation is false, and somewhat less clearly alleges that the photograph allegedly showing him engaging in sexual activity in the presence of a minor does not so indicate when placed in proper context. *See* Doc. #12 at 6-7.

But the complaint does not indicate that the unlawful strip search or assault was a result of these rumors, or indeed that any of the defendants named in this lawsuit repeated the rumors or even viewed the photograph. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*,

720 F.3d 133, 138 (2d Cir. 2013). Hill does not do so.

It is true that Hill indicates that other officers—who are not listed as defendants—saw the photograph (and, the complaint might be read to imply, used the photograph to spread false rumors as a result). *See, e.g.*, Doc. #12 at 6 (listing correction officers named "Reyes" and "Donahu" as having "view[ed] the photo"). But the complaint does not indicate that any state-imposed alteration of his status or burden was imposed thereby; merely that these individuals spread rumors about him such that they caused him "mental and emotional injuries."[3] These do not constitute a "change of status or burden" and, in any event, Hill cannot seek damages for the mental or emotional injury arising from the spreading of false rumors. *See* 42 U.S.C. § 1997e(e). I will therefore dismiss Hill's defamation or "stigma-plus" claims in their entirety.

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

1. Hill's Fourth and Fourteenth Amendment claims for unreasonable searches and excessive force arising from the alleged incident of March 1, 2019 may proceed against defendants Tyburski, Crosby, Miller, Jefferson, and Doe.

2. All other claims and defendants to this action are DISMISSED. The Clerk shall terminate from the docket the dismissed defendants.

3. The Clerk shall verify the current work addresses for the above-named defendants with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to those defendants at the confirmed addresses **within twenty-one (21) days of this Order**, and report to the Court on the status of the waiver requests by not later than **the thirty-fifth (35) day after mailing**. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

---

[3] In passing, Hill alleges that his legal mail was opened, Doc. #12 at 7, and that he was designated as a member of a gang known as the "Blood G-Shine Set," *id*. at 6, but never connects these acts to any falsehoods about his sexual behaviors. Insofar as these asides attempt to state separate claims, I will dismiss them as conclusory.

4. All defendants shall file their response to the complaint, either an answer or motion to dismiss, **within sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

5. The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

6. The discovery deadline is extended to **six months (180 days) from the date of this Order**. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the Clerk must send to plaintiff with a copy of this order. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

7. The deadline for summary judgment motions is extended to **seven months (210 days) from the date of this Order**.

8. Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion (*i.e.*, a motion to dismiss or a motion for summary judgment) **within twenty-one (21) days of the date the motion was filed**. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

9. If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he **MUST** notify the court. Failure to do so may result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he must indicate all of the case numbers in the notification of change of address. Plaintiff must also notify defendants or defense counsel of his new address.

10. Plaintiff shall utilize the Prisoner E-Filing Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

It is so ordered.

Dated at New Haven this 19th day of April 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

9