UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMARLE HILL,<br>*Plaintiff*,<br><br>v.<br><br>TYBURSKI *et al.*,<br>*Defendants*. | No. 3:19-cv-01674 (JAM) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Prisoners have a right to basic bodily privacy including a right to be free from unreasonable strip searches by prison officials. The plaintiff in this case challenges a visual body cavity search executed by prison officials upon his return to the prison from a court proceeding. In light of the controlling legal standards that govern the authority of prison officials to subject a prisoner to a visual body cavity search, I conclude on the basis of the defendants' undisputed summary judgment evidence that there is no genuine issue of fact to show that the search amounted to a violation of the plaintiff's constitutional rights.

BACKGROUND

Plaintiff Jamarle Hill was a pre-trial detainee at the Hartford Correctional Center (HCC). On March 1, 2019, he was subject to a strip search upon his return to HCC from a court appearance. He filed a *pro se* federal court complaint alleging that the strip search was conducted in a manner that violated his constitutional rights under the Fourth and Fourteenth Amendments.

On April 19, 2020, I issued an initial review order pursuant to 28 U.S.C. § 1915A allowing Hill's claims to proceed against several correctional officer defendants including

Lieutenant Tyburski and Officers Crosby, Miller, Jefferson, and Doe.[1] I described how Hill alleged that "during the search, Officer Miller pushed down on his back, Officer Jefferson grabbed his ankles, and Officers Crosby and Doe groped and spread his buttocks apart," and that "Lieutenant Tyburski authorized and videotaped the search."[2] I noted that "Hill's allegations may be construed as a claim that the more intrusive and forceful controlled strip search, authorized and videotaped by Lieutenant Tyburski and performed by Officers Crosby, Miller, Jefferson, and Doe, was unnecessary or excessive" and that "Hill has stated a plausible claim [under the Fourth Amendment] that the scope of the search and the manner in which the search was conducted was unreasonable."[3] I further noted that "[t]o the extent that Hill alleges not only an unreasonable strip search but a use of excessive force and physical sexual assault, this claim may also be cognizable under the Due Process Clause of the Fourteenth Amendment."[4]

Following my issuance of the initial review order, the defendants moved to dismiss, arguing that video footage of the strip search conclusively refuted Hill's claims that the search was improperly performed.[5] They filed under seal a video of the strip search.[6] But because their motion sought an evidence-based merits adjudication of Hill's complaint, I denied the motion to dismiss without prejudice to the filing of a motion for summary judgment.[7]

---

[1] Doc. #31 at 5-6; *see Hill v. Tyburski*, 2020 WL 1914929 (D. Conn. 2020).
[2] *Id.* at *3.
[3] *Ibid.*
[4] *Ibid.*
[5] Doc. #40.
[6] Docs. #42, #47. The defendants filed two DVD discs. One is a handheld video that was made for official documentation purposes, and it shows approximately 15 minutes of video starting from when Tyburski ordered the strip search to be done after Hill refused to cooperate until when Hill was taken to a cell. The second is purportedly a video from a fixed camera mounted in the room where the search occurred, but the DVD filed with the Court is blank. Because the defendants have not submitted a video from the fixed camera, I do not rely on their description of what the fixed camera video shows. The handheld video is sufficiently clear and comprehensive to resolve this motion.
[7] Doc. #51.

On November 9, 2021, the defendants moved for summary judgment.[8] The Court's local rules ensure that a *pro se* party is thoroughly advised of the procedural requirements for opposing a summary judgment motion, *see* D. Conn. L. Civ. R. 56(b), and the defendants here complied with the rule's requirement to serve on Hill a notice detailing the rules that govern a motion for summary judgment.[9]

Hill was required to file any objection to the defendants' motion for summary judgment within 21 days, but he did not do so. Instead, more than two months later, Hill filed a motion on January 24, 2022 to view the Department of Correction's (DOC) video footage of the strip search at issue.[10] The defendants filed a response stating that the video footage revealed sensitive security information about the interior dimensions, staffing, and procedures in place at a correctional facility such that a copy could not be furnished to Hill but that "the plaintiff's best course at this juncture is to view the video under seal in the custody of the Clerk."[11]

More than three months later, Hill filed a motion for extension of time on May 19, 2022 to file a response to the defendants' motion for summary judgment.[12] The motion stated without elaboration that "I apologize for the delay due to the pandemic and also mental health issue obtain [sic] from claims against the defendants [in this] action."[13]

In addition, Hill filed his own cross-motion for summary judgment on June 27, 2022.[14] Hill's motion is a 5-page statement that reiterates his claim that the strip search was conducted in a manner that violated his rights. It is not accompanied by any affidavits or other evidentiary

---

[8] Doc. #67.
[9] Doc. #67-13. By the time that the defendants filed their motion for summary judgment, Hill had been released from prison. Hill has since filed multiple notices of address changes since January 2021. Docs. #52, #54, #71. He has not made any claim that he has not received the defendants' motion for summary judgment.
[10] Doc. #68.
[11] Doc. #70 at 1.
[12] Doc. #72.
[13] *Id.* at 1-2.
[14] Doc. #73.

documents as required to support a motion for summary judgment. *See* Fed. R. Civ. P. 56; D. Conn. L. Civ. R. 56. Moreover, Hill's motion alleges the involvement of two officers—"Officer Googly" and "Officer Cataldo"—who were not named as defendants in Hill's complaint, and it makes no reference to two of the defendants—Crosby and Doe—who were named as defendants in the complaint.[15] Although the defendants have not filed an objection or response to Hill's motion, I understand their own motion for summary judgment to constitute their response.

On August 26, 2022, I entered orders setting a date for Hill to come to the courthouse on September 2, 2022 to review the video and also setting a new date of September 16, 2022 for Hill to file any objection to the defendants' motion for summary judgment.[16] Hill appeared at the courthouse at the designated time and watched the video, but he has not filed any objection or other response to the defendants' motion for summary judgment.

## DISCUSSION

Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable factfinder to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues of fact but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

---

[15] Doc. #73.
[16] Docs. #74, #75.

Because Hill is a *pro se* party, his pleadings and submissions on summary judgment must be given a liberal construction. "The policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156-57 (2d Cir. 2017) (*per curiam*).

Still, a party's *pro se* status does not relieve the party of the obligation to respond to a motion for summary judgment and to support the party's claims with evidence as the rules require. *See Nguedi v. Fed. Reserve Bank of New York*, 813 F. App'x 616, 618 (2d Cir. 2020). If a plaintiff does not submit evidence to dispute the evidence adduced by defendants to support their motion for summary judgment, then a court may fully credit the defendants' evidence. *See, e.g.*, *Spicer v. Burden*, 564 F. Supp. 3d 22, 27 (D. Conn. 2021).

Hill's claims implicate the basic constitutional rights of prisoners to intimate bodily privacy and to be free from the use of force that is excessive or not for reasons relating to a legitimate government purpose. The Fourth Amendment—as applicable to the States through the Fourteenth Amendment—protects the rights of prisoners to intimate bodily privacy consistent with the institutional and security needs of a prison facility. *See Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (*per curiam*); *White v. Doe*, 2021 WL 4034164, at *4 (D. Conn. 2021). "Visual body cavity searches are invasive and degrading, occasioning a serious invasion of privacy and working a significant harm to a person's bodily integrity." *Sloley v. VanBramer*, 945 F.3d 30, 38 (2d Cir. 2019). When a prisoner challenges a visual body cavity search, a court must decide if the search was reasonable by reference to the scope of the intrusion, the manner in which it was

conducted, the justification for conducting it, and the place where it was conducted. *See Harris*, 818 F.3d at 58-62.

In addition to the protections of the Fourth Amendment, the Due Process Clause of the Fourteenth Amendment protects a pre-trial detainee from the use of excessive force that amounts to punishment, and from actions that are not rationally related to a legitimate nonpunitive government purpose or actions that are excessive in relation to that purpose. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397-400 (2015); *Frost v. New York City Police Dept.*, 980 F.3d 231, 251-52 (2d Cir. 2020).

According to the defendants' statement of material facts, Hill was subject to a strip search upon his return to Hartford Correctional Center from a court proceeding.[17] Defendant Theodore Jefferson and two other correction officers not named as defendants—Adam Gooley and Steven Cataldo—attempted to perform a routine strip search of Hill in accordance with DOC policy for inmates returning from outside a correctional facility.[18]

The DOC policy requires a strip search of a prisoner when returning to a facility.[19] In the event that the prisoner declines to cooperate, the policy allows for a "hands on, controlled strip-search of an inmate," in which "[i]f the inmate continues to be uncooperative, staff may manually position parts of the inmate's body in order to view all areas of the inmate's body, making every attempt to avoid physical contact with the genitals and the rectum."[20]

I do not understand Hill to challenge the validity of a prison policy that requires prisoners to be subject to a strip search when arriving at a prison facility. "Generally, strip searches

---

[17] Doc. #67-2 at 2 (¶ 6).
[18] *Ibid*. (¶¶ 5-6).
[19] *See* CONN. DEP'T OF CORR., *Searches Conducted in Correctional Facilities*, at 2-3 (¶ 5(b)(ii)), https://portal.ct.gov/-/media/DOC/Pdf/Ad/AD06/AD0607_20180629.pdf [https://perma.cc/NW45-KNB9].
[20] *Id.* at 4 (¶ 5(e)). The policy further requires the video recording of a controlled strip search. *Ibid.* (¶ 5(e)(ii)).

conducted prior to and after a transport may be justified in the search for contraband." *Johnson v.*

*Padin*, 2020 WL 4818363, at *5 (D. Conn. 2020). That is because "[c]orrectional officials have a

legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason

of what new detainees may carry in on their bodies." *Florence v. Bd. of Chosen Freeholders of*

*Cnty. of Burlington*, 566 U.S. 318, 322 (2012). And "[e]xperience shows that people arrested for

minor offenses have tried to smuggle prohibited items into jail, sometimes by using their rectal

cavities or genitals for the concealment." *Id.* at 335. Thus, the Supreme Court in *Florence* upheld

a policy requiring all incoming detainees who were to be in the general population of a prison

facility to submit to a visual body cavity strip search.

 The evidence here shows that when Hill refused to comply with a visual search of his

rectal cavity, Cataldo called for assistance from supervising Lieutenant Megan Tyburski.[21] After

Hill continued to resist, Tyburski ordered officers Jefferson, Gooley, and Cataldo (all of whom

are male) to perform a controlled strip search.[22] While Tyburski stood behind a partition to

protect Hill's privacy, Hill removed his clothing and underwear in accordance with the officers'

directions.[23]

 But when the officers attempted to perform a visual body cavity search of Hill's rectal

cavity as required by DOC policy, Hill refused to bend forward and spread his buttocks to permit

a visual inspection.[24] He insisted that it was sufficient to squat and cough instead.[25] The officers

then handcuffed Hill, at which point he complained of sexual harassment.[26] While Hill remained

handcuffed, the officers pressed on his upper back to lean him forward at the waist while

---

[21] Doc. #67-2 at 2 (¶¶ 7-8).
[22] *Id*. at 3 (¶¶ 11-14).
[23] *Id*. at 3-4 (¶¶ 17-21).
[24] *Id*. at 4 (¶ 22); *see Searches Conducted in Correctional Facilities*, *supra* note 19, at 2 (¶ 3(p)).
[25] Doc. #67-2 at 4 (¶ 22).
[26] *Ibid*. (¶ 24).

Jefferson visually inspected his rectal cavity for approximately one second.[27] Neither Jefferson

nor any of the other officers touched Hill's buttocks or otherwise groped him in any fashion.[28]

As the officers re-dressed Hill, he said to them: "You don't have to worry about me…You didn't

assault me so I'm not going to assault y'all."[29]

      The entire strip search was documented by a handheld video camera in accordance with

DOC policy.[30] I have watched the video, and it is fully consistent with the defendants' account of

the circumstances of the search. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (court may

credit video that conclusively refutes a plaintiff's version of events); *Gibbs v. City of Bridgeport*,

2018 WL 4119588, at *7 (D. Conn. 2018) (same). It shows that the officers did what was

minimally necessary to ensure that Hill did not have contraband in his rectum. It does not show

that the officers acted with excessive force, that they laid hands on Hill in any manner that could

be construed as a sexual assault, or that they otherwise acted improperly or for any improper

purpose.

      In short, I will grant the defendants' motion for summary judgment. As to Hill's Fourth

Amendment bodily privacy claim, I have considered all the relevant factors (the scope of the

intrusion, the manner in which it was conducted, the justification for conducting it, and the place

where it was conducted) and conclude that there is no genuine fact issue to suggest that the

search was not reasonable at its inception or in its execution. As to Hill's Fourteenth Amendment

due process claim, there is no genuine fact issue to suggest that the defendants acted for any

punitive or improper purpose or that their actions were excessive in relation to the proper

---

[27] *Id*. at 4-5 (¶¶ 25-26); Doc. #67-4 at 3 (¶ 19) ("I stood approximately three feet behind inmate Hill-throughout, never touched him, and performed the visual inspection which took exactly one second.").

[28] Doc. #67-2 at 5-6 (¶¶ 26, 32).

[29] *Id*. at 5 (¶ 29).

[30] *Id*. at 2, 6 (¶¶ 9, 33); Def. Ex. 1a (video of controlled strip search); *Searches Conducted in Correctional Facilities*, *supra* note 19, at 4 (¶ 5(e)(ii)).

purpose of ensuring that Hill did not have contraband.

In addition, the defendants also assert qualified immunity. *See Mara v. Rilling*, 921 F.3d 48, 68-69 (2d Cir. 2019). I agree with the defendants in light of the undisputed factual record that no objectively reasonable officer would have believed that any of the defendants were violating Hill's constitutional rights.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the defendants' motion for summary judgment (Doc. #67) and DENIES Hill's cross-motion for summary judgment (Doc. #73). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 23rd day of September 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge